**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **PHILIP TRAUGOTT BUCKLER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:22-cv-368 |
| | ) | Case No.: _____ |
| **LLOYD J. AUSTIN, III**, | ) | |
| Individually and in his official capacity as | ) | **COMPLAINT** |
| United States Secretary of Defense; UNITED | ) | |
| STATES DEPARTMENT OF DEFENSE; | ) | |
| **CHRISTINE WORMUTH**, individually and in | ) | |
| her official capacity as United States Secretary | ) | |
| of the Army, LTG **SCOTT DINGLE,** | ) | |
| individually and in his official capacity as | ) | |
| Surgeon General of the Army, | ) | |
| LTG **KEVIN VEREEN,** | ) | |
| individually and in his official capacity as | ) | |
| Commander, Deputy Chief of Staff of Installations, | ) | |
| | | |
| Defendants. | | |

**INTRODUCTION**

1.    Plaintiff, MAJ Philip Traugott Buckler, D.D.S., (hereinafter "Plaintiff"), by and through his attorneys, Tully Rinckey, PLLC, brings this Complaint against the Defendants, Lloyd J. Austin, III, in his individual and official capacity as United States Secretary of Defense, Christine Wormuth, in her individual and official capacity as United States Secretary of the Army, Lieutenant General Scott Dingle, in his individual and official capacity as Surgeon General of the Army, and Lieutenant General Kevin Vereen, in his individual and official capacity as Deputy Chief of Staff of Installations.

2.    Plaintiff is a Major in the United States Army who challenges Defendants' mask mandates, as applied to him, because they substantially burden the exercise of his religious beliefs, in violation of the United States Constitution, the Religious Freedom Restoration Act, the Administrative Procedure Act, Department of Defense Instructions, and Department of the Army

1

Regulations.

3.    Plaintiff is opposed and has objected to wear of the mask in context of COVID-19 based upon his sincerely held religious beliefs.

4.    Plaintiff challenges the policies and actions detailed below as applied to Plaintiff.

5.    Defendants' policies and actions have deprived and will continue to deprive Plaintiff of his rights under the United States Constitution and federal law.

6.    Defendants committed every act alleged herein under the color of law and authority.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and federal law.

8.    This Court has jurisdiction under 28 U.S.C. § 1346 because this is a civil action against the United States.

9.    This Court has jurisdiction under 28 U.S.C. § 1361 to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

10.    This Court has jurisdiction under 42 U.S.C. § 2000bb-1(c) because Plaintiff's religious exercise has been burdened by Defendants.

11.    This Court has jurisdiction to review Defendants' unlawful actions and inactions and enter appropriate relief under the Administrative Procedure Act, 5 U.S.C. § 701-706.

12.    This Court has jurisdiction to review and enjoin ultra vires or unconstitutional agency action through an equitable cause of action. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-92 (1949).

13.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because Plaintiff's home of record is in El Paso County, Texas, and because the location in which the original violations took place and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred are in El Paso, Texas, within the District of this Court.

## STATUTORY PROVISIONS

14.     The Administrative Procedures Act (APA), 5 U.S.C. § 701-706, et seq., provides that: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. "[T]o the extent necessary to prevent irreparable injury, the reviewing court… may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. "[T]he reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. 5 U.S.C. § 706.

15.     The APA directs that "[t]he reviewing court shall— (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be— (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity…. (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence … …" 5 U.S.C. § 706.

16.     The Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, et seq. provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a). The term "exercise of religion" under RFRA "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4); 42 U.S.C. § 2000cc-5(7)(A). RFRA "applies to all Federal law, and the implementation of that law, whether statutory or otherwise." 42 U.S.C. § 2000bb-3(a).

17.     RFRA provides only one exception to the rule above, stating that the "Government may substantially burden a person's exercise of religion **only if**

it demonstrates that application of the burden **to the person** – (1) is in furtherance of a **compelling governmental interest**; and (2) is the **least restrictive means** of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b) (emphasis added). The government "demonstrates" these two elements only if it "meets the burdens of going forward with the evidence and of persuasion." 42 U.S.C. § 2000bb-2(3).

18.    RFRA provides for judicial relief, stating: "A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c).    The term "government," under RFRA, "includes a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States." 42 U.S.C. § 2000bb-2(1).

19.    The First Amendment provides that the government "shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech." According to the Supreme Court, the clause protects individuals' right to exercise their religion of choice and prohibits government regulations that target religious beliefs. The free exercise clause protects not only religious beliefs, but acts involved with religious practice. Under the clause, the government may not compel religious belief, punish religious expression, or impose regulations that favor one religion over another.

## PARTIES

### Plaintiff

20.    Plaintiff, Philip Traugott Buckler, D.D.S. ("Plaintiff") is a licensed general dentist and an active duty commissioned officer in the United States Army, holding the rank of Major (MAJ).

### Defendants

21.    Defendant Lloyd J. Austin, III, is the United States Secretary of Defense. Secretary Austin issued a memorandum on February 4, 2021, which requires all service

members of the United States Armed Forces to wear masks. Secretary Austin is a named defendant and is being sued in his individual and official capacity.

22.    United States Department of Defense (hereinafter "DoD") is an executive branch department that coordinates and supervises all agencies and functions of the government related to the United States Armed Forces, including the COVID masking policies at issue herein.

23.    Defendant United States Army is part of the Department of the Army, one of the military departments of the DoD.

24.    Defendant Christine Wormuth is the Secretary of the Army. Secretary Wormuth is sued in her individual and official capacities.

25.    Defendant Lieutenant General (LTG) Scott Dingle is the Surgeon General of the Army. Surgeon General Dingle is sued in his individual and official capacities.

26.    Defendant Lieutenant General (LTG) General Kevin Vereen was the Commander for US Army Recruiting Command and took action against Plaintiff in relation to masking. LTG Kevin Vereen currently serves as Deputy Chief of Staff for Installations. LTG Vereen is sued in his individual and official capacities.

## OPERATIVE FACTS

27.    Defendants have discretion in granting religious accommodations. *See*, *e.g.*, Department of Defense Instruction (hereinafter "DoDI") 1300.17, Religious Liberty in the Military services, dated September 1, 2020; Army Executive Order 298-20, Religious Liberty and Religious Accommodation, dated October 15, 2020; Army Directive 2018-19 (Approval, Disapproval, and Elevation of Requests for Religious Accommodation), November 8, 2018; and Army Regulation 600-20 (Army Command Policy), dated July 24, 2020.

28.    For over eleven years, Plaintiff has served his country as an officer and dentist in the United States Army. The Army has never disciplined Plaintiff and has never had cause to discipline him for any reason, until he requested and was denied religious accommodation. Plaintiff has consistently and fully supported and sustained Defendants' interests in military

readiness, unit cohesion, good order, discipline, health, and safety, as documented in his previous DD 214 and every Officer Evaluation Report he has received from 2010 until 2022. (*See* Ex. 1).

29.     Plaintiff is a non-denominational Protestant Christian who holds the religious belief that wearing a facemask in the context of COVID is a form of symbolic speech which causes him to violate the Commandment not to lie, *i.e.* not to bear false witness against his neighbor. This thereby causes Plaintiff to violate the commandment to "love your neighbor as yourself" and to "do unto others as I want them to do unto me." Plaintiff has documented that mask-wearing is contrary to ubiquitous Biblical language and inconsistent with Christian practice throughout history, even during the worst plagues. Plaintiff has communicated to Defendants his sincerely held belief that public health has taken on the nature of a quasi-religion, a novel form of idolatry, of which mask-wearing is the most visible performative ritual. Plaintiff believes that the Apostle Paul's instructions to believers in Romans 14 – are not just for trivialities and apply to his situation. He believes that, while moral values and duties have objective existence, they supervene on individuals differently according to circumstances. Numerous Biblical examples show that God calls, assigns, and orders different believers to forego or engage in different specific practices depending on their individual situation, so it is entirely possible that even within the same unit of Soldiers, it may be one Soldier's God-given moral duty to refuse to wear a mask, and at the same time another Soldier's duty to put on a mask. Plaintiff also pointed Defendants to the precedent of other believing Soldiers, such as Desmond Doss, who God assigned to affirm the moral value of human life by refusing to carry a weapon even in combat. Plaintiff thus does not believe that anyone and everyone who wears a mask on grounds of COVID is acting immorally, but rather that he is part of a subset of Christians on whom God has placed a special duty to refuse mask-wearing in the context of COVID. Based upon his Christian faith as revealed through the Holy Bible and prayerful discernment, Plaintiff subscribes to the sincere religious belief that, upon seeking guidance from God as to whether to wear a mask, in context of COVID-19, God assigned him not to do so. In

other words, Plaintiff's sincerely held religious faith dictates that he refuses mask-wearing in any manner which exceeds the usage common in his profession and the general public prior to 2020. (*See* Ex. 2).

30.    Plaintiff is the only Soldier in his company who has been subjected to discriminatory weekly COVID testing in the absence of signs or symptoms from June to present. He is willing to wear a mask as traditionally worn in the dental profession before COVID-19: during active treatment as a barrier to visible oral debris. What constitutes a violation of his sincerely held religious beliefs is wearing a mask in a manner which is in excess of the usage common in his profession and among the general public prior to 2020, and this is what Plaintiff requested an accommodation exempting him from.

31.    Defendants have forced Plaintiff into a perpetual choice between adhering to his religious beliefs or following orders to modify his behavior in violation of his religious beliefs. Plaintiff must either follow direct orders contrary to his sincerely held religious belief or face punishment up to and including separation from the Army, *i.e.* the termination of his career as a military officer, potentially with a less than honorable discharge, which will harm his civilian licensure and employment opportunities.

32.    Plaintiff has established the sincerity of his religious beliefs regarding mask-wearing, and the sincerity of his religious beliefs are not in dispute. (*See* Ex. 3).

33.    From March of 2020 through the present, the DoD, the Army, and Plaintiff's various commanders have issued written and verbal orders mandating varied rules around the wearing of masks as a COVID-prevention measure. The current order, issued on 29 July 2021, demands that all service members on Ft Knox wear masks when while in medical facilities. (*See* Ex. 4).

34.    Owing to the unremitting conflict with his religious beliefs, in February of 2021, after two days of prayer and fasting, Plaintiff began the Army's arduous process of requesting a religious accommodation, asking that he be exempted from these policies demanding that he wear a face mask. (*See* Ex. 4).

35.     The religious accommodation process is described in Army Directive 2018-19, which contains dozens of steps. Plaintiff spent seven months and hundreds of hours assembling a complete, robust, actionable religious accommodation packet capable of meeting and surmounting even the most stringent administrative requirements, which he submitted in August of 2021. (*See* Ex. 5). Plaintiff filed several requests, time and again, with all the documents and proof the government demanded. He waited patiently through long, unexplained delays. He submitted multiple appeals to perfunctory denials.

36.     The end of this administrative labyrinth came on 18 March 2022, when the Army Surgeon General denied Plaintiff's final appeal. (*See* Ex. 6).

37.     To date, Plaintiff's submissions include: several statements carefully detailing his religious beliefs and need for accommodation; a letter from his pastor; two separate memos from two separate chaplains confirming the sincerity of his beliefs; and two separate memos from two separate medical officers, neither of which opined against accommodation, and one of which explicitly endorsed his request, unequivocally stating: "accommodation for Plaintiff's request will not have a significant adverse effect on mission accomplishment, military readiness, or pose a risk to health and safety of himself and the force." (*See* Ex. 6).

38.     Plaintiff has been forced since March 2020 to either violate his religious beliefs or face great damage to, or even total loss of, his career. From March 2020, all the way to February 2022, while on duty, Plaintiff followed Defendants' orders to wear a mask despite the conflict with his religious beliefs. In January of 2022, after waiting over four (4) months for a response to his religious accommodation request and receiving none, Plaintiff finally decided he could no longer continue to violate his religious principles. On January 10, 2022, Plaintiff gave his Brigade command three full weeks of formal advance notice of his decision to stop masking on February 1st. (*See* Ex. 7).

39.     Since that decision, that he could no longer live in violation of his religious principles, Plaintiff has received several negative counseling's for "disobeying orders," each of which threatened the possibility of criminal actions and have resulted in Plaintiff receiving

numerous adverse administrative actions against him. Since February 1, 2022, Plaintiff has suffered ongoing adverse administrative actions for respectfully refusing to submit to wearing a mask in violation of his sincerely-held religious beliefs. These adverse actions and other discriminatory treatment continue to put substantial pressure on Plaintiff to significantly modify his religious behavior or face continued punishment that detrimentally impacts his professional career. (*See* Ex. 8).

40.     Plaintiff believes that staying true to his faith is incompatible with wearing a mask outside of directly administering patient care. Plaintiff views life as sacred and deserving protection. Therefore, he does not object to other safety measures such as physical distancing, regular testing, sick leave, and teleworking, which have been successful alternatives. Indeed, Defendants have employed such measures during the past two years successfully for Plaintiff and meanwhile punished him for his faith.

41.     Wearing a mask conveys a particular message to the patients and staff who place their trust in Plaintiff's medical expertise and opinion: namely, that mandatory face coverings are medically and scientifically necessary to prevent the spread of the coronavirus, and that the CDC, public health officials, and military leadership have adopted appropriate measures to combat COVID-19. The masking requirement is an attempt to prescribe what shall be orthodox in politics, medicine, and science, despite a deep divide over these issues of opinion. Masking forces Plaintiff to act as an instrument for fostering public adherence to this ideological point of view. (*See* Ex. 9).

42.     Being forced to wear a mask, under these circumstances, involves compelled statements of fact and opinion by Plaintiff. Plaintiff is in a position of trust as a dentist, with his patients and staff relying on and trusting in his medical expertise. In wearing a mask, Plaintiff is forced to convey the message that masks are an effective COVID-19 prevention measure and, more generally, that the CDC, health officials, and military leaders are effectively combating the spread of COVID through scientifically sound methods. Patients and staff understand this message when they see Plaintiff in a mask. Meanwhile, Plaintiff is largely forbidden in the

military to express contrary political opinions, or, rather, political opinions at all, in order to correct this mistaken understanding by his patients and staff.

43.     On April 12th, 2022, Plaintiff was issued a General Officer Letter of Reprimand ("GOMOR") (*See* Ex. 10), followed immediately by a Referred Officer Evaluation Report ("Referred OER") finalized on April 15 (*See* Ex. 11), each of which are individually capable of irreparably poisoning his career by their severely detrimental effects on his chances of advancement and promotion. Despite providing his command with extensive and robust submissions rebutting both the GOMOR and Referred OER, on August 2nd Plaintiff received notification of Officer Elimination Initiation (*See* Ex. 12), from the USAREC Commander, Major General Kevin Vereen (subsequently promoted to Lieutenant General) informing him that he was being administratively discharged from the Army on the basis of: his alleged violation of Fort Knox General Order Number 1, dated  July 21, 2021 (*See* Ex. 4), receipt of a GOMOR, and a Referred OER. Plaintiff elected for a Board of Inquiry which has yet to be scheduled. In sum, Plaintiff now faces a hearing at which his command seeks to separate him from service, destroying his military career.

44.     Despite this treatment, Plaintiff was always, and remains, willing and motivated to perform his work in the Army at the highest level, as his supervisors throughout this period can attest. As part of the effort to mitigate the spread of COVID, he has remained willing to continue to take regular COVID-19 tests, socially distance, and work remotely as appropriate.

45.     Defendants have denied Plaintiff's request for religious accommodation after holding his request in administrative limbo months beyond the generous internal timeline their own policies allowed.

46.     Defendants have substantially refused to grant Soldiers' requests for religious accommodation related to COVID-19, and Plaintiff's mask-related accommodation request in particular. (*See* Ex. 5).

47.     Plaintiff is now undergoing involuntary separation from the Army, which would terminate his Army career and harm his professional future.  This is all based upon his respectful

refusal to submit to wearing a mask, in violation of his substantiated and sincerely held religious beliefs since February 1, 2022. Defendants' unlawful refusal to grant religious accommodation denied Plaintiff his rights required under superseding statutory law and the First Amendment.

### The DoD and Army Mask Mandates

48.     By the second week of April 2022, most DoD commands, including those Plaintiff fell under, issued masking orders based on "Force Health Protection Guidance (Supplement 5)" issued 7 April 2020. On February 4, 2021, Secretary Austin issued a memorandum entitled "Use of Masks and Other Public Health Measures" (the "DoD Mask Mandate"), and these were incorporated into the April 4, 2022 "Consolidated Department of Defense Coronavirus Disease 2019 Force Health Protection Guidance." (*See* Ex. 13).

49.     The DoD Mask Mandate provides that all individuals on military installations and all individuals performing official duties on behalf of the DoD "from any location other than the individual's home, including outdoor shared spaces, will wear masks in accordance with the most current CDC guidelines."

50.     The DoD mask mandate states that "Masks recommended by the CDC include non-medical disposable masks, masks made with breathable fabric (such as cotton), masks made with tightly woven fabric (i.e., fabrics that do not let light pass through when held up to a light source), masks with two or three layers, and masks with inner filter pockets."

51.     SECDEF Lloyd Austin's memorandum of 4 February 2021 permits exceptions for secular activities: "For brief periods of time when eating and drinking;" "briefly for identification or security purposes;" and "to reasonably accommodate an individual with a disability."

52.     The Consolidated Force Health Protection Guidance of 4 April 2022 lists still more masking exceptions to: "accommodate participation in a religious service;" "when clear or unrestricted visualization of verbal communication is required for safe and effective operations;" "when environmental conditions are such that mask wearing presents a health and safety hazard;" and "case-by-case exceptions." (*See* Ex. 13).

53.     Defendants issued subsequent guidance stating that service members who are not compliant with Covid-19 Directives, mask wear and vaccinations will immediately suffer adverse consequences as directed by their service components. The adverse consequences may include court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special or off-duty employment pay, placement in a non-deployable status, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes. Plaintiff has suffered, or is currently suffering, all punishment above except court-martial and removal from promotion lists, thus far.

54.     On August 24, 2021, Secretary Austin issued a memorandum entitled "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members" (the "DoD Mask Mandate").

55.     Department of Defense Instruction (DODI) 1300.17, Religious Liberty in the Military Services, dated September 1, 2020, establishes DoD policy in furtherance of RFRA and the Free Exercise Clause of the First Amendment to the Constitution of the United States, recognizing that Service Members have the right to observe the tenets of their religion, or to observe no religion at all.

56.     DODI 1300.17 provides that "[i]n accordance with Section 533(a)(1) of Public Law 112-239, as amended, the DoD Components will accommodate individual expressions of sincerely held beliefs (conscience, moral principles, or religious beliefs) which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety. A Service member's expression of such beliefs may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, and assignment."

57.     DODI 1300.17 further provides that "[a]ccommodation includes excusing a Service member from an otherwise applicable military policy, practice, or duty. In accordance

with RFRA, if such a military policy, practice, or duty substantially burdens a Service member's exercise of religion, accommodation can only be denied if: "(1) The military policy, practice, or duty is in furtherance of a compelling governmental interest; and (2) It is the least restrictive means of furthering that compelling governmental interest."

## Causes of Action

### CAUSE ONE

### Violation of the Religious Freedom Restoration Act
### 42 U.S.C. § 2000bb et seq.

58.      Plaintiff repeats and re-alleges each of the allegations contained in the foregoing paragraphs of this Complaint.

59.      RFRA states that the government shall not substantially burden a person's exercise of religion even by means of a rule of general applicability. 42 U.S.C. § 2000bb-1.

60.      RFRA extends to all branches of the military, including the Army.

61.      RFRA protects any exercise of religion, whether or not compelled by, or central to, a system of religious belief. 42 U.S.C. § 2000bb2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

62.      The exercise of religion involves not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons. *Burwell v. Hobby Lobby Stores, Inc*., 573 U.S. 682, 710 (2014) (citing *Smith*, 494 U.S. at 877).

63.      The Supreme Court has articulated repeatedly that courts may not question whether sincerely held religious beliefs are reasonable. *Hobby Lobby*, 573 U.S. at 724.

64.      Plaintiff sincerely believes that the exercise of his religion precludes him from wearing a mask in a manner exceeding the usage common in his profession and the general public prior to 2020.

65.      Defendants acknowledge and have extensively documented the substantiated sincerity of Plaintiff's belief that his exercise of religion prevents him from wearing a mask.

66.     A person's exercise of religion is substantially burdened whenever a measure imposes substantial pressure on an adherent to modify his or her behavior and to violate his or her beliefs.

67.     Defendants' mask mandates impose a substantial burden on Plaintiff's exercise of religion, and Plaintiff is being forced to choose between violating his religious beliefs and ending his career and livelihood. (*See* Ex. 8).

68.     RFRA imposes a strict scrutiny test on all actions of the federal government that substantially burden a person's exercise of religion. 42 U.S.C. § 200bb-1(b).

69.     Before imposing a substantial burden on a person's exercise of religion, the government must demonstrate that application of the **burden <u>to the person</u>** (1) is in furtherance of a **compelling governmental interest**; and (2) is the **least restrictive means** of furthering that compelling governmental interest. 42 U.S.C. § 200bb-1(b).

70.     Defendants must establish that they have a compelling governmental interest in denying an accommodation to Plaintiff in particular. Defendants were required to give Plaintiff individual consideration.

71.     Defendants do not have a compelling governmental interest in requiring Plaintiff to wear a mask, and Defendants have failed to give Plaintiff individual consideration. Defendants have identified nothing to support a compelling interest in denying Plaintiff in particular an accommodation from the Mandates.  Defendants' boilerplate denial memorandums are substantially composed of the same format and contents as every other denial, except for the name on the denial.  More revealing, this initial denial memorandum from LTG Vereen was issued on the exact same day as the completed packet was received. The Secretary of the Army's response was equally considerate in that no real deliberation was provided to substantiate any of the asserted justifications, much less "specific and reliable" evidence of a volume and strength which would appropriately or even respectfully respond commensurate with the effort of Plaintiff's research, prayer, evidence, and corroboration to affirm his well-documented accommodation requests. Neither Defendants' accommodation denials nor their subsequent

adverse actions make so much as a cursory gesture at quantifying or even describing the additional risk they assert is imposed on military readiness, unit cohesion, good order and discipline, or health and safety by one doctor with robust natural immunity failing to wear a mask outside of patient treatment.

72.    This case is not about whether wearing facemasks is an effective means of decreasing respiratory viral transmission. Rather, it is about whether the Defendants have met the standard of scrutiny that applicable law requires in order to justify the substantial burden they have placed upon this Soldier to violate his sincerely held religious beliefs. The scientific evidence regarding masks has relevance only insofar as it affects Defendants' ability to satisfy a necessary but not sufficient part of their total burden of proof. Defendants have completely failed to show by a preponderance of scientific evidence that the use of facemasks is scientifically warranted to a degree that overcomes the protections of RFRA, the APA, and the First Amendment. The lack of certainty in the science supporting COVID-masking adds weight to Plaintiff's position that the burden upon him outweighs the negligible risk of Plaintiff alone foregoing masking.

73.    Defendants are not utilizing the least restrictive means to further their interest. Defendants have already utilized less restrictive means to at least partially accommodate Plaintiff through generalized teleworking and social distancing policies, as well as providing Plaintiff with a temporary office with a door for several months. Also, Defendants ignore the fact that as a dentist who has done his homework, Plaintiff is well-versed in genuinely evidence-based infection control. If the risk to the force from unmasking were truly so great that "military necessity" can permit no exceptions, then by the nature of what dental treatment must always entail, no routine dental treatment whatsoever could be justified! Yet Plaintiff was Officer in Charge of Fort Bliss' East Bliss Dental Clinic from September of 2020 until he received orders to Fort Knox in 2021, and during this time every case of COVID was contact traced, yet not one case of COVID in clinical staff or patients was traced back to intra-clinic transmission. (*See* Ex. 14). Defendants' failure to accommodate Plaintiff's religious accommodation request does not

pass the strict scrutiny test laid out in RFRA. Relying on a generalized assertion of "military necessity," compelling interest, and less-restrictive means is not sufficient to provide grounds for official or constructive denial of accommodation requests. This is even more true when denials fail to demonstrate supporting evidence or reasoned "to the person" analysis.

74.     RFRA imposes the standard of "strict scrutiny," stating that: Government may substantially burden a person's exercise of religion **only if** it demonstrates that application of the burden to the person is (1) in furtherance of a **compelling governmental interest**; **and** (2) is the **least restrictive means** of furthering that compelling governmental interest. 42 U.S.C. § 2000bb-1(b) (emphasis added).

75.     Department of Defense Instruction (DODI) 1300.17, Religious Liberty in the Military Services, dated September 1, 2020, establishes DoD policy in furtherance of RFRA and the Free Exercise Clause of the First Amendment to the Constitution of the United States, recognizing that: "Service members have the right to observe the tenets of their religion or to observe no religion at all, as provided in this issuance."

76.     DODI 1300.17 provides that: The DoD Components will accommodate individual expressions of sincerely held beliefs (conscience, moral principles, or religious beliefs) which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety. A Service member's expression of such beliefs may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, and assignment.

77.     DODI 1300.17 further provides that: Accommodation includes excusing a Service member from an otherwise applicable military policy, practice, or duty. In accordance with RFRA, if such a military policy, practice, or duty substantially burdens a Service member's exercise of religion, accommodation can only be denied if: The military policy, practice, or duty is in furtherance of a compelling governmental interest; and it is the least restrictive means of furthering that compelling governmental interest.

78.     Army Reg 600-20, dated 6 November 2014, incorporates DODI 1300.17 and

provides policy and guidance for the accommodation of religious practices within the Department of the Army.

79.    Plaintiff has documented his sincerely held religious beliefs forbidding him from wearing masks as a COVID-19 prevention practice. Defendants' own chaplains have confirmed this sincerity, and Defendants' reviewing medical providers have either endorsed Plaintiff's request or declined to weigh against it. (*See* Ex. 14).

80.    Defendants' masking policies substantially burden Plaintiff's religious beliefs by requiring him to either act in violation of those beliefs or suffer adverse consequences to his career and reputation as a military officer, to his dental career, and to his personal reputation.

81.    Plaintiff has already suffered concrete, particularized injury from Defendants' adverse actions referenced above. In turn, irreparable harm from both non-recoverable compliance and non-compliance of mask wear, in violation of his conscience, faith, and moral duty, create an ongoing crisis of conscience that require adhering to his religious beliefs, or modifying his behavior to violate those beliefs but preserve his employment. This conflict has manifested into an ongoing deprivation of 1st Amendment rights of freedom of speech and freedom of religious practice for over two years; Plaintiff's treatment as a second-class citizen, based on his nonconformity with the mask mandate, has stifled networking opportunities, training engagements, and travel, thereby being placed at a competitive disadvantage for adhering to his beliefs. The substantial economic losses incurred by Plaintiff in his pursuit of judicial redress have siphoned off resources that would have otherwise gone to support his family. Plaintiff is currently threatened with further and more extreme harms, through the initiation of an Officer Elimination action on 2 August 2022, which places Plaintiff at risk of losing his career in the Army even sooner.

82.    "Requiring a service member either to follow a direct order contrary to a sincerely held religious belief, or to face immediate processing for separation or other punishment undoubtedly causes irreparable harm. *Sambrano v. United Airlines, Inc*., 19 F.4th 839, 842 (5th Cir. 2021) (Ho, J., dissenting) ("To hypothesize that the earthly reward of

monetary damages could compensate for these profound challenges of faith is to mis-understand the entire nature of religious conviction at its most foundational level.")  "The crisis of conscience imposed by the mandate is itself an irreparable harm. *See BST Holdings*, 17 F.4th at 618*; Sambrano v. United Airlines*, 19 F.4th 839, 842 (5th Cir. 2021) (Ho, J., dissenting) (citing *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974))."

83.    Defendants' masking policies fail the strict scrutiny standard demanded by RFRA. **First**, Defendants forced masking policies, as applied to Plaintiff individually, are <u>not</u> in furtherance of a **compelling governmental interest.** It's vital for this Court keep in mind that even if masking in general was found to be in furtherance of a compelling government interest and the least restrictive means of accomplishing that interest, RFRA demands this compelling interest apply <u>in relation to Plaintiff as an individual</u>.

84.    RFRA specifically contemplates "a person's exercise of religion." 42 U.S.C. § 2000bb-1(a). That is why the Supreme Court has said that RFRA "requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged [policy] 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Hobby Lobby*, 573 U.S. at 726, 134 S.Ct. 2751. Thus, the Court "must 'look beyond broadly formulated interests,' [such as maintaining the health and readiness of military forces] and instead consider 'the asserted harm of granting specific exemptions to particular religious claimants[.]' " *Navy SEALs 1–26*, ––– F. Supp. 3d at ––––, 2022 WL 34443, at *10 (quoting *Hobby Lobby*, 573 U.S. at 726–27, 134 S.Ct. 2751).

85.    Plaintiff is not currently being considered for deployment and additionally he can do much of his current work via telework, can socially distance if necessary, and is willing to wear masks as was the normal course in his profession before COVID-19, which never conflicted with his religious beliefs. *Contrast U.S. Navy Seals 1-26*, 2022 WL 987768 (5th Cir. 2022) (where a large consideration was ability to deploy and where Plaintiffs undisputedly worked in settings 'where telework, social distancing, and other preventative measures are not realistic options'). Moreover, at the time of this filing, Plaintiff has been able to successfully get

"green" (i.e. deployable) in the Army's medical readiness system ("MEDPROS") by completing all of his required annual medical exams as a patient in civilian audiology, ophthalmology, and dental offices without once wearing a mask – thus providing further evidence that Defendants' stubborn refusal to provide accommodation is neither necessary nor warranted even in the case of a dentist.

86.     It is also vital for this Court to note that the primary issue before this court is *masking* and <u>not vaccination</u>. Masking is not comparable to vaccination. Unlike vaccination, masks cannot contribute to primary immunity. Masking is thus comparable and exchangeable with other common COVID-19 containment methods such as social distancing, handwashing, and quarantining.

87.     Even if this Court were to find that COVID-19 containment – in general and not as applied to only Plaintiff himself – remains a compelling government interest, masking is not an effective means –  much less the *least restrictive means* – of accomplishing this interest.

88.     This Court also must consider the *current* state of the COVID-19 pandemic. As of the filing of this Complaint. Plaintiff services healthy active-duty dental patients. The CDC has reduced masking and quarantine for those unvaccinated but with natural immunity; and the efficacy, or lack thereof, of masks is more fully and widely understood now. (*See* Ex. 15). Defendants' denial of Plaintiff's religious accommodation never passed RFRA's individualized, strict scrutiny test and fails that test even more severely with every passing day post-pandemic.

89.     Additionally, the Court should consider that Plaintiff is part of the military community at Fort Knox. At this point, more than 97% of the Army has already received the COVID-19 vaccine, rendering the risk from unmasked personnel proportionately negligible. (*See* Ex.16).

90.     It bears repeating that the Army already employs a very successful, historically effective, and narrowly tailored method of preventing COVID-19 spread from the symptomatic: self-quarantine. **The mask mandates thus only address one risk: lethal spread of COVID-19 from *asymptomatic* individuals,** who comprise a smaller and much less infectious subset of

COVID-19 carriers. Please refer to the conclusions of Plaintiff's Science Brief (*See* Ex. 19), included in his Affidavit (*See* Ex. 2) addresses this point in more detail, as well as his response to the Mask counseling, dated October 19, 2021 (*See* Ex. 21), and finally his counseling comments Memorandum for Record, dated January 28, 2022. (*See* Ex. 22).

91.    At this point, masking has been eliminated in all but the medical and dental clinics at Fort Knox. Plaintiff is an active-duty dentist who treats only service members, a population that is almost 100% vaccinated at this point. Plaintiff also wears a medical mask whenever actively providing treatment to patients, as has always been standard practice in the dental profession, to provide a barrier for visible oral macro-debris – a standard practice which has never conflicted with his religious beliefs.

92.    *Multiple* meta-analyses collectively incorporating *hundreds* of studies showing the risk of transmission of *symptomatic* COVID in a workplace or even clinical setting is less than 1/3 the risk of transmission in the home, and that *asymptomatic* carriers are less than one-sixth to one twentieth the infection risk of symptomatic cases. Combined, these findings indicate that the base probability of at-employment lethal asymptomatic transmission of COVID for operational purposes is statistically zero, and *at worst* less than 1 in a million, even *before* so many people acquired immunity by traditional means over the winter of 2021-2022. (*See* Ex. 19).

93.    In sum, Defendants **do not have a compelling interest** in forcing **this individual Plaintiff** to wear masks in violation of his religious beliefs. Defendants very well may not even have a compelling interest in forcing anyone at all to wear masks, given the current state of the nation, with reduced incidence, spread, and severity of COVID-19, along with the highly vaccinated military population.

94.    **Second**, Defendants' forced masking policies, **as applied to Plaintiff individually**, are <u>not</u> the **least restrictive means** of furthering the alleged compelling governmental interest. Defendants can use multiple lesser restrictive methods of mitigating the (negligible) possibility of Plaintiff spreading of COVID-19.

95.     Accordingly, Defendants' application of their masking mandates to Plaintiff, and their subsequent refusal to grant him a religious exception, violate Plaintiff's rights under RFRA and the implementing DoD and Army regulations, the APA, and the First Amendment.

96.     Plaintiff has no adequate or available administrative remedy, as he has exhausted all administrative procedures, and in any case, RFRA contains no administrative exhaustion requirement.

97.     Plaintiff has no adequate remedy at law. There is no monetary compensation that can cure the burden upon Plaintiff's sincerely-held religious beliefs or the damage to his military career and reputation. (See Ex. 2).

98.     Absent injunctive and declaratory relief, Plaintiff will have been and continue to be irreparably harmed through ongoing deprivation of his constitutional and statutory rights to Free Exercise. As "ripeness" can occur no later than the moment a servicemember must suffer irreparable harm via denial of Free Exercise or irreparably defy an order, this issue is exceptionally ripe for adjudication. Plaintiff has received final denial of his appeal for religious accommodation, and Defendants have not only severely damaged his military career through administrative actions but are now working to separate him from service. Plaintiff reasonably expects that Defendants' will deny all associated attempts to seek redress predicated on the legitimacy of that denial, as they have done up to this point and continue to do. Defendants have denied or withheld approval of all COVID-19 vaccine and mask-related religious accommodation requests of all service members including Plaintiff's own. Meanwhile, Defendants' mask mandates are a source of ongoing duress for Plaintiff to violate his religious principles.

99.     Defendants' Mask Mandates fail strict scrutiny.

100.    Accordingly, Defendants' Mask Mandates violate Plaintiffs' rights under RFRA.

**CAUSE TWO**

21

**Violation of the Administrative Procedure Act**
**(Agency Action Not in Accordance with Law)**
**5 U.S.C. §§ 551, 701-06**

101.    Plaintiff repeats and re-alleges each of the allegations contained in the foregoing paragraphs of this Complaint.

102.    Under the Administrative Procedure Act ("APA"), a court shall "hold unlawful and set aside" any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D).

103.    Defendants' actions are not in accordance with the law.

104.    Plaintiff has no adequate or available administrative remedy, as he has exhausted all administrative procedures.

105.    Plaintiff has no adequate remedy at law.

106.    Absent injunctive and declaratory relief, Plaintiff will have been and continue to be harmed.

107.    Notwithstanding the explicit language of RFRA and the Supreme Court's holding in *Burwell*, 573 U.S. at 726–27, the Army did not conduct the required "to the person" analysis of whether application of the Army's COVID-19 mask mandates furthered a compelling interest and were the least restrictive means as applied to Plaintiff.

108.    Plaintiff repeats and re-alleges each of the allegations contained in the foregoing paragraphs of this Complaint.

109.    The APA also prohibits agency actions that are "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

110.    Mask and vaccine mandates fail to consider or arbitrarily reject obvious alternatives and reasonable accommodations such as quarantining symptomatic individuals, localized HEPA filtration, temperature checks, hand hygiene, and random surveillance testing.

111.    It is arbitrary and capricious to fail to specify and quantify, or at the very least

specify and exemplify, how the hypothesized prospective erosion of military discipline, hierarchy, the accomplishment of the military mission, or the like attributable to accommodation of Plaintiff's sincerely held religious beliefs outweighs a constitutionally fundamental right guaranteed by the Religious Freedom Restoration Act and the Free Exercise Clause of the First Amendment.

112.    By refusing to even engage in the individualized, strict scrutiny assessment demanded by RFRA (See Ex. 20), Defendants have acted in a manner that is arbitrary, capricious, and an abuse of discretion within the meaning of 5 U.S.C. § 706(2)(A).

113.    Plaintiff has no adequate or available administrative remedy, as he has exhausted all administrative procedures.

114.    Plaintiffs has no adequate remedy at law.

115.    Absent injunctive and declaratory relief, Plaintiff's harm will continue to persist.

## CAUSE THREE

### Violation of the First Amendment, 5 U.S.C. §§ 551, 701-06

"Symbolism is a primitive but effective way of communicating ideas. The use of an emblem or flag to symbolize some system, idea, institution, or personality, is a short cut from mind to mind." *West Virginia v. Barnette et. al.* 319 U.S. 624 (1943).

116.    Plaintiff repeats and re-alleges each of the allegations contained in the foregoing paragraphs of this Complaint.

117.    The First Amendment provides in relevant part that "Congress shall make no law … abridging the freedom of speech."

118.    To determine "whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play," the two-part Johnson test asks: (1) "whether '[a]n intent to convey a particularized message was present,' " and (2) whether "the likelihood was great that the message would be understood by those who viewed it." *Burns*, 999 F.3d at 1336 (citing *Texas v. Johnson*, 491 U.S. 397, 404 (1989))." (*Zinman v. Nova Southeastern University*, 142 S.Ct. 872 (2022)).

119.    Even before 2020 the symbolic and communicative properties inherent in mask-wearing were explicitly recognized in the scientific literature. Jacobs' 2009 study which found surgical masks provided no protection from upper respiratory infections for Japanese healthcare workers noted: "Wearing a face mask may also communicate to the other party that the individual with the mask is either (1) infectious or (2) thinks the person they are talking with is infectious." In his 2005 book, *False Alarm: The Truth About the Epidemic of Fear*, Dr. Marc Seigel observed: "Respiratory masks and other paraphernalia meant to shield us actually spread panic more effectively than any terrorist agent by sending the message that something is in the offing." In a 2018 research article discussing his clinical findings regarding the subtype of process addiction known as "mask dependency," the author relates one mask-wearer's communicative intent: "When I went out, I always wore a mask as an indication of my intention to refuse to interact with people." (*See* Ex. 17).

120.    "Social influences come in two basic categories. The first involves information. If many people do something or think something, their actions and their thoughts convey information about what is best for you to do or think. If people are picking up after their dogs, buckling their seatbelts, driving under the speed limit, saving for retirement, treating people equally, or wearing masks, you might think that is the right thing to do. The second involves peer pressure. If you care about what other people think about you (perhaps in the mistaken belief that they are paying some attention to what you are doing—see below), then you might go along with the crowd to avoid their wrath or curry their favor. In some places during the COVID-19 pandemic, you'd get a cold stare or worse, if you weren't wearing a mask in a public place—and in some places, you'd get a cold stare or worse if you were wearing a mask." (Thaler, Richard H.; Sunstein, Cass R. Nudge (pp. 65-66). Penguin Publishing Group. Kindle Edition).

121.    Clearly, both wearing and not wearing a mask "sends a message," which is the very definition of symbolic speech. The fact that many people dislike the message, or that people disagree about the virtues of the message involved does nothing to defeat the fact that a message is being sent.

122.    Published scientific literature since 2020 recognizes this as well: "Others refuse to wear a mask for political reasons, seeing it as a symbolic statement. Republicans are less likely to wear masks than Democrats, with less than 50% of Republicans wearing masks compared with over 75% of Democrats. For some, mask-wearing can be viewed as a sign of weakness and shame, particularly for men. Sixty-seven percent of women reported that they wore masks outside compared to just 56% of men." (*See* Ex. 18). Another commentary published in the International Journal for Environmental Research and Public Health observed: "… mask adherence may, in part, be a function of whether or not mask wearing is perceived to be normative among one's political party." (*See* Ex. 19).

123.    Judicial assertions justifying dismissal of challenges to compulsory mask-wearing on First Amendment grounds have asserted that "neither wearing nor not wearing a mask is inherently expressive" *Burns v. Town of Palm Beach,* 999 F.3d at 1336 (citing *Texas v. Johnson*, 491 U.S. 397, 404 (1989))", but such dismissals fail to consider the all-important component of symbolic speech which is context. Such decisions erroneously assume that because masks may not be symbolic speech in some contexts such as an operating room, they then cannot constitute symbolic speech in other contexts. Meaning is extremely context dependent. Gestures which are completely innocuous in one context may have great import in others. Eating a piece of bread and taking a sip of wine is not "inherently expressive" either, but when done in the company of others in a house of worship, it becomes a symbolic profession of the Christian faith, with the nuanced way it is done even communicating a celebrant's denominational branch. In the pandemic and post-pandemic contexts, mask-wearing has clear messaging.

124.    Other grounds cited for dismissing such cases are just as fatally flawed. For example: "While Plaintiff may interpret mask wearing as subservience or akin to worship of idols, that message would not be "overwhelmingly apparent" to one observing him or anyone else wearing a mask." *Burns v. Town of Palm Beach,* 999 F.3d at 1336 (citing *Texas v. Johnson*, 491 U.S. 397, 404 (1989))." Such reasoning disregards both Supreme Court precedent and basic

logic. It confuses sufficiency with necessity. Being "overwhelmingly apparent" is obviously sufficient to meet the Johnson test but is not a necessary requirement of it. In *West Virginia Board of Education v. Barnette et. al. 319 U.S. 624*, even though the vast majority of Americans did not perceive saluting the flag as an act of worship sufficient to violate the commandments found in Exodus 20: 4-5, the fact that members of the minority sect Jehovah's Witnesses did so was sufficient to implicate First Amendment protections of both speech and religious practice.

125. Findings that masking does not constitute compelled speech fly in the face of copious scientific literature, strong pronouncements from both sides of the political aisle, and universal experience. If covering or uncovering one's *head* or saluting or not saluting a flag (*West Virginia Board of Education v. Barnette et. al. 319 U.S. 624,* at 13), or refusing to carry a weapon, or putting on an armband (*Tinker v. Des Moines School Dist.,* 393 U.S. 503), can all constitute symbolic speech, then the covering or uncovering of one's *face* by wearing or not wearing a mask certainly does so as well.

126. Jesus Himself engaged in an act of symbolic speech when he declined to participate in the common hygiene practice of handwashing before eating at a dinner party in order to make a point that was considered highly offensive by many present (Luke 11:37-53). It should come as no surprise, therefore, that many who profess to be Jesus' followers immediately and intuitively recognized the symbolic speech inherent in wearing or not wearing a mask in the context of COVID and acted accordingly. Evangelicals, for example, have been less likely than the general population to wear masks throughout the events surrounding COVID, and Evangelicals as a group have been harshly criticized for this fact. (*See* https://relevantmagazine.com/culture/study-young-white-evangelicals-are-way-less-likely-to-wear-a-mask/). Thus, by September of 2022, the conclusion that mask-wearing or non-wearing does not implicate speech can only be reached through willful ignorance.

127. In the context of COVID, masks effectively turned wearers into actor-accomplices in a Solomon Asch compliance experiment. The involvement of doctors exacerbated the impact by adding the effects of authority figures as described in Stanley

Milgram's famous obedience experiments. Mandates had the effect of making this nationwide, uninformed experiment non-consensual, and all but eliminated the control group. When a dentist like Plaintiff wears a mask, it constitutes tacit approval of a particular medical intervention and modified quarantine measure, as well as a declaration of infectiousness or infectability, and an endorsement of the moral and legal legitimacy of the measure through social modeling.

128.    The requirement to wear a mask in medical facilities, while not applying to equally close quarters outside medical facilities and with *ad-hoc* exceptions within medical facilities, is compelled symbolic speech. This requirement, in these circumstances, is a symbolic act communicating a particularized message and a great likelihood that the message is understood by those who view the symbolic act. Specifically, masking conveys the message, in Plaintiff's professional setting with those patients and staff that place their trust in his medical opinions, that masks are an effective COVID prevention measure and, more generally, that the CDC, health officials, and military leaders are effectively combating the spread of COVID through scientifically sound methods. Masking requirements are an attempt to prescribe what shall be orthodox in politics, science, and medicine, despite a legitimate divergence of opinions.

129.    Given the lack of impact and disruption created by Plaintiff not wearing a mask, in a community in which masks are not required outside medical facilities and are subject to *ad-hoc* and routine exceptions even within medical facilities, the requirement to wear a mask here constitutes compelled speech: namely, signaling that masking is required for safety.

130.    Of equal if not greater importance, The First Amendment's Free Exercise Clause prohibits the government from enacting laws burdening religious exercise that are not both neutral and generally applicable, unless they are narrowly tailored to a compelling a governmental interest.

131.    The Mask Mandates are not generally applicable. "A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions" (*Fulton v. City of Phila*., --- U.S. --- -, 141 S. Ct. 1868, 1877 (2021)). "A law also lacks general applicability if it prohibits religious

conduct while permitting secular conduct that undermines the government's asserted interests in a similar way" *Id*., citing *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 524–28, 542–46 (1993)).  Service members are invited to apply for accommodations and exceptions to policy on the basis of several individualized situations, including religious belief. However, evidence admitted in parallel court cases as well as Plaintiff's personal experience have shown that Defendants' religious accommodation process is an act of futile theater designed to give the appearance of due process and accommodation with none of the actual substance.

132.    The Mask Mandates are not neutral because they prohibit religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way. Both as-written and in-practice, the mask mandates are riddled with unexplained secular exceptions to masking while disallowing service members from refraining for religious reasons. Regardless of whether one service member is unmasked for a medical reason, another unmasked for an operational reason, and another unmasked for a religious reason, all such service members pose an identical hazard to the broad interest asserted by Defendants in "preserv[ing] the usefulness of Soldiers within the command" and "safeguarding [Plaintiff's] health and welfare and that of others." Since Defendants are willing to accept risks from people who are unmasked for secular reasons but not from people with religious reasons, the Mandates are not neutral.

133.    A law that is not neutral or not generally applicable and burdens religious exercise must satisfy strict scrutiny. The masking mandates do not pass such scrutiny, as detailed *supra*.

134.    Even if the policies in question are not facially unconstitutional under the First Amendment, they are unconstitutional under the First Amendment as applied to Plaintiff.

135.    Plaintiff cannot effectively speak out to counter this expression as a service member while on duty.

136.    Plaintiff has no adequate or available administrative remedy, as he has exhausted all administrative procedures.

137.    Plaintiffs has no adequate remedy at law.

138.    Absent injunctive and declaratory relief, Plaintiff's harm will continue to persist.

**PRELIMINARY INJUNCTION IS WARRANTED**

139.    Plaintiff repeats and re-alleges each of the allegations contained in the foregoing paragraphs of this Complaint.

140.    Plaintiff should be granted a preliminary injunction, prohibiting Defendants from proceeding any further in its attempts to separate Plaintiff from service.

141.    For a movant to demonstrate entitlement to a preliminary injunction, they must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is denied, (3) the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) the grant of an injunction will not disserve the public interest. D*SC Communications Corp. v. DGI Technologies, Inc.,* 81 F.3d 597, 600 (5th Cir. 1996); *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). None of these four requirements has a fixed quantitative value. *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir.1975). Therefore, in applying the four-part test, "a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Id*.

142.    The purpose of a preliminary injunction is limited to preserving the relative positions of the parties until a trial on the merits can be held. Univ. of Tex. v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). "Given this limited purpose and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." Id.

143.    Plaintiff's entitlement to a preliminary injunction is demonstrated through these four factors as follows. Note that the great weight of the irreparable harm to Plaintiff should weigh heavily on the four-factor "sliding scale."

**(1) SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS**

144.    Plaintiff repeats and re-alleges each of the allegations contained in the foregoing paragraphs of this Complaint.

145.    Plaintiff has a substantial likelihood of prevailing on the merits of his claim of violation of his rights under federal laws, specifically: 5 U.S.C. § 701, et seq. (Administrative Procedures Act), 42 U.S.C. § 2000bb, et seq. (Religious Freedom Restoration Act), as well as DoD and Army Regulation.

146.    "A party ... is not required to prove his case in full at a preliminary-injunction hearing." *Camenisch*, 451 U.S. at 395. And a ruling on whether the movant has shown "a substantial likelihood it would prevail on the merits" does "not amount to a ruling on the merits." *Jonibach Management Trust v. Wartburg Enters., Inc.*, 750 F.3d 486, 491 (**5th Cir**. 2014).

147.    "The standard doesn't demand a demonstration of certain success. *See* Schiavo ex rel. *Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). Rather, the standard only asks whether it is "likely or probable" that Plaintiff will prevail." (*Air Force Officer vs. Austin et. al.* Case 5:22-cv-00009-TES Document 51 at 20 Filed 02/15/22) *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 585 (E.D. La. 2016), aff'd sub nom. Monumental Task Comm., Inc. v. Chao, 678 F. App'x 250 (5th Cir. 2017).

### (2) SUBSTANTIAL THREAT OF IRREPARABLE INJURY

148.    "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed. 2013).

149.    Plaintiff has suffered, and will continue to suffer, irreparable injury. A classic case of "substantial pressure" occurs when a person has to choose between his job and his religion. *Sherbert v. Verner*, 374 U.S. 398, 404 (1963). Plaintiff has been, and continues to be, forced to choose between his career as an Army officer and dentist and his religious beliefs. To date, he has suffered severe consequences to his personal life and  career. He is, or has been, effectively barred by Defendants from clinical practice, as he has been for over nine months;

precluded from favorable action, including travel for personal or professional reasons; and he is under immediate threat of being terminated from the Army via an involuntary separation board.

150.    Plaintiff has no adequate remedy at law. Monetary damages cannot compensate for these losses.

151.    Plaintiff has no adequate or available administrative remedy. Plaintiff applied for a religious accommodation, was denied a religious accommodation, timely appealed the denial of the religious accommodation, and was denied after appeal. A Soldier unlawfully denied a religious accommodation and ordered to violate his substantiated, protected, sincerely held religious beliefs suffers immediate, irreparable harm to Free Exercise even if an administrative mechanism might speculatively afford a measure of relief in the future. Even assuming some burden of administrative exhaustion remains despite RFRA and extends through an appeal process to a board for correction, the irreparable harm exception to administrative exhaustion has already attached months ago, the claim is fully ripe, and an action and remedy lie immediately in federal court.

152.    Absent injunctive and declaratory relief against the masking policies, Plaintiff will continue to be harmed and face the threat of even greater harm.

### (3) THE THREATENED INJURY TO MAJOR BUCKLER OUTWEIGHS ANY HARM THAT WILL RESULT FROM THE INJUNCTION; and

### (4) THE INJUNCTION WILL NOT DISSERVE THE PUBLIC INTEREST

153.    The third and fourth requirements for issuance of a preliminary injunction-the balance of harms and the public interest-"merge when the Government is the opposing party." U.S. NAVY SEALS, 2022 WL 987768 (C.A.5), 51 (citing *Nken v. Holder,* 556 U.S. 418, 435 (2009).

154.    As set forth in paragraphs and sections above, Defendants cannot possibly show a significant harm in allowing Plaintiff an individual masking exception, either in the past or in the present state of the nation and military, in relation to COVID-19.  Defendants' failure is exemplified by the fact that the categorical initial denial of Plaintiff's religious accommodation

request was signed on March 1st, citing grounds of infection control, good order, and discipline. This was the very same day that Under Secretary of Defense Gilbert Cisneros issued his memorandum lifting most of the mask requirements Army-wide. (*See* Ex. 23).   Military necessity for infection control, good order, and discipline – the reasons cited in Defendants' initial denial memo – cannot simultaneously require categorically denying accommodation from COVID masking to one Soldier while removing masking requirements from all Soldiers in almost all other circumstances.

155.   Further, the public has a considerable interest in retaining the military services of skilled, experienced, highly trained, patriotic service members, doctors, and clinicians like Plaintiff, especially in light of the current recruiting difficulties. As Judge Steven Merryday explains in *Navy Seal 1 v. Biden*'s 22 November 2021 order (Doc. 40 at 32): *"To accomplish the consideration required by RFRA, the military certainly must consider, perhaps above all else, not whether COVID adversely affects the force (or course it does) but whether the readiness and fitness of the force is more adversely affected (1) by granting exemptions and accommodations to a stated number of sincere objectors or (2) by punishing, separating, and discharging that same stated number of skilled and experienced personnel, notwithstanding the time, energy, and money expended to train those service members and necessarily spent again to locate, recruit, and train a successor, including the cost of the successors' acquiring similar experience and the deficit in fitness and readiness experienced in the interim."*

156.   The injury to Plaintiff's religious freedom far outweighs the negligible harm, if any, to Defendants and the public.

157.   Plaintiff seeks declaratory relief to preserve the status quo and continue in the performance of his duties as part of a his previously unmarred military service record.

## PRAYER FOR RELIEF

158.   WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against  Defendants and provide the following relief:

(A)    A ruling that the masking policies challenged in this Complaint violate Plaintiff's rights under: the First Amendment to the United States Constitution, the Religious Freedom Restoration Act, and the Administrative Procedure Act.

(B)    A permanent injunction demanding that Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf: cease enforcing against the Plaintiff the masking policies challenged in this Complaint; cease harming Plaintiff's military career, including but not limited to proceeding in administratively separating Plaintiff from military service; remove all negative records from all of Plaintiff's military records files related to Plaintiff's failure to abide my masking policies and orders; and

(C)    All other further relief to which Plaintiff may be entitled.


Respectfully Submitted,
Tully Rinckey, PLLC

*Sean C Timmons*

Sean C. Timmons, Esq., LL.M
Managing Partner Tully Rinckey, PLLC
Military and National Security Law Attorney
2925 Richmond Ave 12th Floor
Houston, Texas 77098
(832) 240-3273 Phone
(832) 241-5998 Fax
Admitted to practice law in Texas and New York